**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JANET M. WOOD, individually and
on behalf of all other similarly
situated,

        *Plaintiff-Appellant,*

        v.

CITY OF SAN DIEGO; DOES 1-20,
inclusive,

        *Defendants-Appellees.*

No. 10-56826

D.C. No.
3:03-cv-01910-
MMA-POR

OPINION

Appeal from the United States District Court
for the Southern District of California
Michael M. Anello, District Judge, Presiding

Argued and Submitted
April 10, 2012—Pasadena, California

Filed May 9, 2012

Before: Betty B. Fletcher, Andrew J. Kleinfeld, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge B. Fletcher

4939

## COUNSEL

Michael A. Conger, Rancho Santa Fe, California (argued), Richard H. Benes, San Diego, California, for appellant Janet M. Wood.

David B. Hopkins (argued), Candace M. Carroll, Robert P. Allenby, Sullivan, Hill, Lewin, Rez & Engel, San Diego, California, for appellee the City of San Diego.

## OPINION

B. FLETCHER, Circuit Judge:

Janet Wood ("Wood") brought suit under Title VII of the Civil Rights Act of 1964, alleging that the surviving spouse benefit provided by the City of San Diego ("the City") to its retired employees discriminates on the basis of sex. The district court dismissed Wood's disparate treatment and disparate impact claims and entered judgment in favor of the City. We affirm.

## I.

Wood retired in 2005 after over thirty-two years as an employee of the City.[1] Like all City employees, Wood participated in the City's defined benefit pension plan, which is administered by the San Diego City Employee Retirement System ("SDCERS"). City employees are required to contribute a percentage of their salary to their pensions, *see* San Diego Municipal Code ("SDMC") § 24.0104(a), and the City is required to make "substantially equal" contributions. San Diego City Charter art. IX, § 143. City employees are also required to contribute a percentage of their salary to fund survivor benefits as well as their pensions.[2] SDMC § 24.0601. Pension contributions and benefits are calculated by ordinance and are neutral with respect to sex (the characteristic relevant to this case). *See* SDMC §§ 24.0201, 24.0601.

When a City employee retires, she must choose among several options for allocating the pension benefit and the survivor benefit. We will refer to the option at issue in this case, codified at SDMC § 24.0601(c), as the "surviving spouse benefit." If a City employee is married (or has a registered domestic partner) at the time of retirement and chooses the surviving spouse benefit, the employee will receive her full monthly pension benefit until her death. At that time, if the employee's spouse or registered domestic partner survives her, the spouse

---

[1] Wood entered something called the Deferred Retirement Option Program ("DROP"), which allows an employee to begin receiving her pension while continuing to work for the City and receiving a normal paycheck. In exchange, the employee agrees to leave City employment within five years and the employee is considered "retired" on the day she enters DROP for the purpose of calculating her pension benefit. While the employee is in DROP, her pension benefits are paid to a DROP account, which accumulates interest and is then paid to the employee upon leaving City employment.

[2] The parties dispute whether the City also makes contributions to fund survivor benefits, but this fact is ultimately immaterial to the outcome of the case.

or partner will receive a monthly allowance equal to half of the employee's monthly pension benefit.[3] SDMC § 24.0601(c).

If a City employee is single at the time of retirement and has chosen the surviving spouse benefit, the City either refunds the employee her contributions to the survivor benefit (plus interest) as a lump sum, or treats the employee's survivor contributions as voluntary additional contributions made to provide a larger monthly pension benefit. SDMC § 24.0601(e). Wood was single when she retired and had chosen the surviving spouse benefit. She elected to have her survivor contributions treated as additional voluntary contributions, adding to her monthly benefit.

On September 24, 2003, Wood filed this class action against the City alleging that the surviving spouse benefit violates Title VII of the Civil Rights Act of 1964 ("Title VII") and California's Fair Employment and Housing Act ("FEHA"). Wood's theory of liability is that because, in the aggregate, the City pays a larger amount of money to the married retirees who select the surviving spouse benefits than it does to single retirees who do the same, and male retirees are more likely to be married, the surviving spouse benefit has an unlawful disparate impact on female retirees. The City does not dispute that, in the aggregate, it costs more to fund surviving spouse benefits for married retirees than it does to refund the survivor contributions made by single retirees.

On May 19, 2004, the City filed a motion for summary judgment arguing that Wood failed to state a claim for relief

---

[3]The City refers to this option as the "maximum benefit" because it is the only survivor benefit option that does not require the employee to reduce her own monthly pension benefit. The other four survivor benefit options allow the employee to choose a reduced monthly pension benefit in exchange for a survivor benefit that will be paid to a named beneficiary (not necessarily a spouse) or the employee's estate upon the employee's death. *See* SDMC §§ 24.0603-24.0607.

under Title VII and that she had failed to properly exhaust her administrative remedies. After briefing on the summary judgment motion, the district court dismissed *sua sponte* Wood's Title VII claim for lack of Article III standing and declined to exercise supplemental jurisdiction over her state law claim. The district court reasoned that Wood had not suffered a concrete injury because she had alleged only that unmarried retirees as a group receive a smaller benefit, and had not alleged that her pension benefit "has been impacted at all, adversely or positively."

On appeal, a different panel of our court reversed the district court in a memorandum disposition. *Wood v. City of San Diego*, 239 F. App'x 310 (9th Cir. 2007). Our decision was based in large part on the fact that "[n]either side was alerted to the need to present evidence or argument about the concreteness or redressability of Wood's injury." *Id.* at 311. We cautioned that "[i]f the district court determines to pursue the standing issue *sua sponte*, then it should afford both parties the opportunity to develop a factual and legal record." *Id.* at 312. We also held that Wood had adequately exhausted her administrative remedies. *Id.*

On remand in June 2008, the City filed a motion arguing that intervening law required dismissal of Wood's Title VII claim for failure to exhaust administrative remedies.[4] The district court denied the City's motion and granted Wood's motion for class certification. The district court also granted Wood leave to amend her complaint in order to, among other things, add a claim for disparate treatment under Title VII in addition to her claim based on disparate impact.

The City filed a motion to dismiss Wood's amended complaint. The City's sole argument with respect to the disparate impact claim was that the surviving spouse benefit is part of

---

[4]In November 2008 the case was transferred from Judge Benitez to Judge Anello.

a bona fide seniority system, which is permitted as a matter of law under Title VII. *See* 42 U.S.C. § 2000e-2(h). The City also argued that Wood failed to state a claim for disparate treatment because she had not alleged discriminatory intent.

The district court denied the motion to dismiss with respect to the disparate impact claim. The district court found that while SDCERS as a whole is a bona fide seniority system, the surviving spouse benefit is a "component of the system [that] is not based on longevity of service." Although the amount of an employee's monthly pension (and thus the surviving spouse benefit) is based on seniority, the ability to receive the surviving spouse benefit is based only on marital status at the time of retirement.

The district court granted, however, the motion to dismiss the disparate treatment claim. The district court observed that Wood had alleged only that the City was aware of the disparate impact of the surviving spouse benefit at the time it adopted the policy and failed "to allege any facts establishing that the City *deliberately* adopted an employment practice . . . in order to discriminate based on gender." Citing Supreme Court and Ninth Circuit case law, the district court ruled that "[a] plaintiff alleging disparate treatment must allege facts showing intentional discrimination. . . . The fact that an employer was aware of, or totally indifferent to the discriminatory impact of, its policy is not sufficient to state a claim for relief." The district court also denied Wood further leave to amend her complaint, finding that the any attempt to amend her disparate treatment claim would be futile.

On August 2, 2010, the parties filed cross-motions for summary judgment on the federal and state law claims, and the City filed a motion to dismiss the Title VII claim under Rule 12(b)(1) based on lack of Article III standing. On November 22, 2010, the district court granted the motion to dismiss, concluding that Wood "has not suffered an 'injury in fact' that is neither 'conjectural [n]or hypothetical.' " The district court

explained that Wood's allegation that she received a less valuable retirement benefit as a single employee "rests upon a series of contingencies," observing that "[i]f Wood had retired married, the value of her [surviving spouse] benefit . . . would have been unknown on the date of retirement because that value was contingent upon a series of events: pre-deceasing her spouse, her spouse surviving her for a period of years, and her spouse's eligibility for the benefit at the time of her death."

The district court also addressed Wood's contention that she suffered economic injury "by receiving a refund of only her employee contributions . . . whereas married retirees receive a benefit funded also by 'substantially equal' matching employer contributions." First, after reviewing the applicable City ordinances, the district court determined that there was no evidence that the City was required to make additional matching contributions to the survivor benefit. Second, the district court determined that Wood had no entitlement to any portion of the City's normal contributions that might fund the surviving spouse benefit, because those benefits technically belong to surviving spouses and not retirees.

The district court thus dismissed Wood's disparate impact claim, declined to exercise supplemental jurisdiction over her remaining state law claims, and entered judgment in favor of the City. Wood timely appealed the dismissal of her Title VII disparate treatment and disparate impact claims.

## II.

We have jurisdiction over the dismissal of Wood's claims under 28 U.S.C. § 1291. We review de novo the district court's decision to dismiss Wood's disparate treatment claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See ASW v. Oregon*, 424 F.3d 970, 974 (9th Cir. 2005). "We accept as true all well pleaded facts in the complaint and construe them in the light most favorable to the nonmoving

party." *Id.* We review for abuse of discretion the district court's decision not to grant further leave for Wood to amend her disparate treatment claim. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). The existence of jurisdiction over the disparate impact claim is also a question of law that we review de novo. *Bova v. City of Medford*, 564 F.3d 1093, 1095 (9th Cir. 2009).

## III.

**[1]** Before the Supreme Court's decisions in *City of Los Angeles, Department of Water & Power v. Manhart*, 435 U.S. 702 (1978), and *Arizona Governing Committee for Tax Deferred Annuity & Deferred Compensation Plans v. Norris*, 463 U.S. 1073 (1983), pension plans often openly discriminated on the basis of sex, in order to account for the fact that women as a class live longer than men. The pension plan at issue in *Manhart* required female employees to make larger contributions than male employees. 435 U.S. at 704. The Supreme Court held that these contribution requirements constituted discrimination and were thus unlawful under Title VII. *Id.* at 711, 717. Five years later, the Court considered the pension plan at issue in *Norris*, which — rather than discriminating with respect to contribution requirements — paid female retirees smaller monthly benefits than male retirees who had made the same contributions. 463 U.S. at 1075. The Court held that this too violated Title VII, and reaffirmed that classification on the basis of sex is not permissible at either the "pay-out stage of a retirement plan" or the "pay-in stage." *Id.* at 1081. Retirement contributions and benefits must be facially neutral with respect to sex and other classifications protected under Title VII.

Prior to *Manhart*, the City of San Diego's retirement plan required male employees to make larger contributions to the surviving spouse benefit, based on the assumption that because women live longer, male employees were more likely to still be married when they retired and more likely to die

before their spouses. After *Manhart*, the contribution amounts were equalized. The current plan is facially neutral: similarly situated male and female employees make the same contributions and receive the same benefits.

But according to Wood, the surviving spouse benefit continues to violate Title VII in two ways. First, because on average the City pays more in benefits to married retirees who select the surviving spouse benefit than it does to single retirees who do the same, and male retirees are more likely to be married, Wood claims that the surviving spouse benefit has an unlawful disparate impact on women. Second, because the City knew that male employees stood to gain more from the surviving spouse benefit — as evidenced by the original policy requiring men to make larger contributions — Wood claims that the City violated Title VII's disparate treatment provision when it equalized the contribution requirements without otherwise changing the program. We address Wood's disparate treatment claim first.

### A.

The district court dismissed Wood's disparate treatment claim pursuant to Rule 12(b)(6) because she failed to adequately allege discriminatory intent. On appeal, Wood argues that her allegations were sufficient, and that in the alternative, the district court should have granted leave for her to amend her complaint a second time.

**[2]** Disparate treatment occurs "where an employer has treated a particular person less favorably than others because of a protected trait." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2672 (2009) (internal quotation marks and alterations omitted). "A disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action." *Id.* (internal quotation marks omitted). A discriminatory motive may be established by the employer's informal decisionmaking or "a formal, facially discriminatory policy,"

but "liability depends on whether the protected trait . . . actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). "It is insufficient for a plaintiff alleging discrimination under the disparate treatment theory to show the employer was merely aware of the adverse consequences the policy would have on a protected group." *Am. Fed'n of State, Cnty., & Mun. Emps. v. Washington*, 770 F.2d 1401, 1405 (9th Cir. 1985).

**[3]** Wood's disparate treatment claim, found at paragraph 33 of her First Amended Complaint, alleges that the surviving spouse benefit "discriminates against women intentionally, within the meaning of Title VII, because it was adopted in 1971 with knowledge of its discriminatory effects." We agree with the district court that this does not adequately allege disparate treatment under *American Federation*, *Hazen*, or *Ricci*. Wood does not claim that the City adopted the surviving spouse benefit *because* it would benefit men more often than women. Her only allegation is that, when the contribution requirements were equalized to comply with *Manhart*, the City was aware that male employees would disproportionately benefit from the change.

**[4]** At oral argument, counsel for Wood argued that *Manhart* and *Norris* were decided as disparate treatment cases, despite the absence of any allegation that the defendants were motivated by animus towards their female employees. But the policies challenged in those cases were facially discriminatory, and the Supreme Court has held that a discriminatory motive may in some situations be inferred from reliance on "a formal, facially discriminatory policy." *See Hazen*, 507 U.S. at 609-10. Where, as here, a plaintiff is challenging a facially neutral policy, there must be a specific allegation of discriminatory intent. *Am. Fed'n*, 770 F.2d at 1405. We agree with the district court that Wood's disparate treatment claim must be dismissed under Rule 12(b)(6).[5]

---

[5]We are also unpersuaded by Wood's argument that the district court could not grant the Rule 12(b)(6) motion because it was bound by its ear-

**[5]** We also conclude that the district court did not abuse its discretion when it denied Wood leave to further amend her complaint. Federal Rule of Civil Procedure 15(a) instructs that before trial the court should "freely give leave" to amend a pleading "when justice so requires." We have held that a district court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1130 (quotation marks and citation omitted). Here, the district court thoroughly explained its reasons for not granting leave to amend:

> [T]he Court finds that the Rule 15(a) factors weigh against granting [Wood's] request. . . . Almost seven years after she filed this case, the Court granted Wood leave to amend her complaint in order to give her the opportunity to state a plausible claim for disparate treatment. Wood took that opportunity, but failed to do so. Any attempt to amend her claim will be futile. Wood cannot in good faith state any facts to show that the City adopted the [surviving spouse benefit] with discriminatory intent against *female* employees . . . .

This decision was not an abuse of discretion. Wood still does not suggest that she can allege any facts to show that the City had a discriminatory intent. We affirm the district court's dismissal of Wood's disparate treatment claim without granting leave to amend.

## B.

The district court dismissed Wood's disparate impact claim for lack of Article III standing. On appeal, Wood argues that

---

lier decision allowing Wood to amend her complaint to include the disparate treatment claim. Wood cites no authority in support of this argument, and the district court carefully explained that it rarely denies leave to amend on futility grounds, noting that its earlier decision did not determine "whether Wood's new allegations were necessarily pled in a manner sufficient to withstand a motion to dismiss."

the City's motion to dismiss pursuant to Rule 12(b)(1) was untimely because it was made after the City filed a responsive pleading; that the district court should not have dismissed her claim on standing grounds because the jurisdictional and merits issues are intertwined; and that her allegations and evidence are sufficient to demonstrate Article III standing.

As a threshold matter, Wood's assertion that the 12(b)(1) motion was untimely is simply wrong. Wood correctly quotes the language from Rule 12(b) that instructs: "A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." But the deadline for making a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is prolonged by Rule 12(h)(3), which provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Indeed, "[t]he objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).[6]

Wood's more substantial arguments concern whether she in fact lacks Article III standing and whether the jurisdictional issues are so intertwined with the merits that the district court should not have dismissed the case on jurisdictional grounds.

**[6]** Although federal courts take a broad view of constitutional standing in civil rights cases, a civil rights plaintiff claiming discrimination "must satisfy the case or controversy requirement of Article III by demonstrating [her] standing to sue at each stage of the litigation."[7] *Chapman v. Pier 1*

---

[6]We similarly reject Wood's numerous assertions that the district court somehow improperly relied on "independently obtained" evidence by using cases and local ordinances that were not cited by the parties. These types of legal authorities are perfectly within the district court's competence to research and analyze on its own.

[7]The district court did not address whether Wood satisfies the statutory standing requirement under Title VII, which provides that "a civil action

*Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc). In order to satisfy constitutional standing requirements, Wood must demonstrate that she "has suffered an injury-in-fact, that the injury is traceable to the [City's] actions, and that the injury can be redressed by a favorable decision." *Id.* The Supreme Court has defined "injury in fact" as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted).

Throughout this litigation, Wood has alleged that she satisfies the standing requirements of Article III because she has suffered a pecuniary injury — namely, that "if married on the day of retirement, a retiring City employee receives a retirement benefit [the surviving spouse benefit] worth far more than the substitute benefit available to an unmarried employee." The City challenged Wood's standing in a 12(b)(1) motion by disputing the truth of that allegation, also known as a "factual" attack on jurisdiction.[8]

To support her allegation, Wood presented declarations stating (1) that in the aggregate, married retirees who choose the surviving spouse benefit receive a larger amount of money than unmarried retirees; (2) that, in the private market, an

may be brought . . . by the person claiming to be aggrieved." 42 U.S.C. § 2000e-5(f)(1). Title VII's jurisdictional provision has been construed broadly by the Supreme Court, but is "more narrow[ ] than the outer boundaries of Article III." *Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 869-70 (2011).

[8]In a factual attack on jurisdiction, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve a factual attack, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. The court need not presume the truthfulness of the plaintiff 's allegations." *Id.* (internal citations omitted).

annuity providing the benefit that married retirees receive would cost more than an annuity providing the benefit that unmarried retirees receive; and (3) that the City makes matching contributions to fund the surviving spouse benefit but does not contribute to the benefit that unmarried retirees receive. First, the district court found that Wood's evidence could not establish that the City in fact made matching contributions to fund the surviving spouse benefit. But regardless of how the surviving spouse benefit is funded, the district court concluded that Wood's evidence could not establish more than speculative, conjectural injuries that are insufficient to satisfy Article III.

The district court's analysis centered on the obvious fact that the value of a pension is tied to the length of a retiree's life. Like every other retired City employee, Wood cannot predict what the ultimate value of her pension will be, or whether she and her hypothetical spouse would have received more money had she been married. As the district court observed, these values are based on the "unknown variables of whether she would have pre-deceased her spouse, whether her spouse would have lived long enough to receive benefits, and whether the benefits received by her spouse would have had a value greater than that which she received [as a single employee] on the date of her retirement."

In other words, when Wood retired as a single employee, she received her monthly pension benefits plus a *guaranteed* refund of her survivor contributions (or at least the option to receive a guaranteed refund by taking them as a lump sum). She has no way of knowing whether this benefit is greater or less than what her hypothetical spouse would have received had she retired married and predeceased her spouse. Some married employees will have spouses who outlive them by many years and end up receiving a pension benefit greater than Wood's; other married employees will outlive their spouses, or they will die simultaneously, and thus receive no benefit from their survivor contributions at all. Similarly,

Wood's evidence about the value of her retirement benefit as a private annuity was based on assumptions about the age of her hypothetical spouse and how long they both would have lived. Wood simply cannot show that, because she was single, she received a less valuable retirement benefit. The district court concluded that this means she has not suffered a concrete, particularized injury.

On appeal, Wood challenges the district court's analysis in two ways. First, she continues to emphasize her argument that the private, actuarial value of her retirement benefit (if purchased on the private market) is less than the actuarial value of the benefit a similarly-situated married employee would receive. Second, she points to a line of cases holding that a "jurisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Safe Air For Everyone*, 373 F.3d at 1039 (quoting *Sun Valley Gas., Inc. v. Ernst Enters.*, 711 F.2d 138, 139 (9th Cir. 1983)). Wood maintains that the factual question of whether or not she was injured is intertwined with the merits of her claim that she is a member of a protected group which has been subject to an unlawful disparate impact. *See Paige v. California*, 291 F.3d 1141, 1144-45 (9th Cir. 2002). Because these factual issues are intertwined, Wood urges the panel to "review the district court's order below not as a dismissal for lack of subject matter jurisdiction but rather as a grant of summary judgment on the merits for the [City]." *Safe Air for Everyone*, 373 F.3d at 1040.

We note that, in the Title VII context, the Supreme Court has made clear that its focus is on the compensation actually paid as a retirement benefit rather than the actuarial value of the policy. *See Norris*, 463 U.S. at 1081-82 ("We reject petitioners' contention that the Arizona plan does not discriminate on the basis of sex because a woman and a man who defer the same amount of compensation will obtain upon retirement

annuity policies having approximately the same present actuarial value."). We also note that at oral argument, counsel for the City seemed to agree that some of the jurisdictional and merits issues in this case are intertwined.

**[7]** But we ultimately need not decide whether Wood satisfies the case or controversy requirements of Article III, or even whether the question of standing is in fact intertwined with the merits of her case. Even if we accept Wood's argument, and review the decision below as a judgment on the merits for the City, we must affirm the decision of the district court, because Wood's claim is foreclosed by the Supreme Court's opinion in *Manhart*. In that case, the Supreme Court expressly recognized that facially neutral pension plans will inevitably have a disparate impact on some protected groups and concluded that such claims are not actionable under Title VII. Thus, even if the district court had considered Wood's disparate impact claim on the merits, it should have dismissed the claim.

As discussed previously, in *Manhart* the Court considered a pension plan that required female employees to make larger contributions than male employees in order to receive the same benefits, on the basis that women live longer than men and their pensions cost more. 435 U.S. at 704-05. Recognizing that "the parties accept as unquestionably true" the generalization that women live longer than men, the Court framed its inquiry as "whether the existence or nonexistence of 'discrimination' is to be determined by comparison of class characteristics or individual characteristics." *Id.* at 707-08.

After examining the text of Title VII, the Court held that "[t]he statute's focus on the individual is unambiguous. It precludes treatment of individuals as simply components of a racial, religious, sexual, or national class." *Id.* at 708; *see* 42 U.S.C. § 2000e-2(a)(1) (making it unlawful "to discriminate against any *individual* with respect to his compensation, terms, conditions, or privileges of employment, because of

such *individual's* race, color, religion, sex, or national origin" (emphasis added)). Therefore, the Court concluded that, in order to comply with Title VII, pension plan contributions must be facially neutral with respect to sex (and presumably any other class protected by Title VII). *Id.* at 711. In *Norris*, the Court confirmed that pension plan *benefits* must be facially neutral as well. 463 U.S. at 1075.

As part of the *Manhart* decision, the Court recognized that facially neutral pension plans would necessarily have a disparate impact on certain groups, and it expressly considered the very situation that Wood challenges here. The Court acknowledged, for example, that "unless women as a class are assessed an extra charge, they will be subsidized, to some extent, by the class of male employees." *Manhart*, 435 U.S. at 708-09. But, the Court noted, this type of subsidy is offset somewhat by survivor benefits: "Since female spouses of male employees are likely to have greater life expectancies than the male spouses of female employees, whatever benefits men lose in 'primary' coverage for themselves, they may regain in 'secondary' coverage for their wives." *Id.* at 709 n. 14. As a general matter, the Court explained:

> Individual risks, like individual performance, may not be predicted by resort to classifications proscribed by Title VII. . . . [W]hen insurance risks are grouped, the better risks always subsidize the poorer risks. Healthy persons subsidize medical benefits for the less healthy; *unmarried workers subsidize the pensions of married workers*; persons who eat, drink, or smoke to excess may subsidize pension benefits for persons whose habits are more temperate. Treating different classes of risks as though they were the same for purposes of group insurance is a common practice that has never been considered inherently unfair.

*Id.* at 710 (emphasis added).

The Court also specifically addressed a disparate impact challenge based on these sorts of subsidies:

> A variation on the Department's fairness theme is the suggestion that a gender-neutral pension plan would itself violate Title VII because of its dispro-portionately heavy impact on male employees. This suggestion has no force in the sex discrimination context because each retiree's total pension benefits are ultimately determined by his *actual life span*; any differential in benefits paid to men and women in the aggregate is thus "based on [a] factor other than sex," and consequently immune from challenge under the Equal Pay Act. Even under Title VII itself — assuming disparate impact analysis applies to fringe benefits — the male employees would not prevail. Even a completely neutral practice will inev-itably have *some* disproportionate impact on one group or another. *Griggs* does not imply, and this Court has never held, that discrimination must always be inferred from such consequences.

*Id.* at 710 n. 20 (internal citations omitted).

**[8]** This last paragraph speaks directly to Wood's claim. Her argument is that a gender-neutral survivor benefit "itself violate[s] Title VII because of its disproportionately heavy impact on [female] employees." *Id.* But this suggestion has been firmly rejected by the Supreme Court, based both on its own interpretation of disparate impact liability and on the Bennett Amendment to Title VII, which provides that a com-pensation differential based on sex is not unlawful if it is authorized by the Equal Pay Act. 42 U.S.C. § 2000e-2(h); *see Manhart*, 435 U.S. at 711-12. The Equal Pay Act authorizes differentials "based on any other factor other than sex." 29 U.S.C. § 206(d); *see Manhart*, 435 U.S. at 712. While this broad language has been subject to much interpretation, foot-note 20 of *Manhart* clearly interprets it to cover the variations

in pension benefits challenged here. Thus, even if the district court had considered Wood's disparate impact claim on its merits, it should have dismissed it as a matter of law.

## IV.

**[9]** We can affirm the district court on any basis supported by the record. *See, e.g., Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). We affirm the district court's dismissal of Wood's disparate treatment claim because she failed to allege intentional discrimination. We affirm the district court's dismissal of Wood's disparate impact claim because, even assuming she has Article III standing, her claim fails as a matter of law. *See Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869, 2877 (2010) ("[A] remand would only require a new Rule 12(b)(6) label for the same Rule 12(b)(1) conclusion."). We AFFIRM the judgment of the district court.