NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ADRIAN A. SAMPSON,

                Plaintiff-Appellant,

v.

KONICA MINOLTA BUSINESS
SOLUTIONS USA, INC.,

                Defendant-Appellee.

No. 23-15458

D.C. No. 2:20-cv-02223-KJD-DJA

MEMORANDUM*

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted March 4, 2024
Las Vegas, Nevada

Before:  M. SMITH, BENNETT, and COLLINS, Circuit Judges.

Plaintiff Adrian Sampson appeals the district court's grant of summary

judgment in favor of Defendant Konica Minolta Business Solutions U.S.A., Inc. on

his racial discrimination and retaliation claims under both Title VII of the Civil

Rights Act of 1964 and 42 U.S.C. § 1981.  We have jurisdiction pursuant to 28

U.S.C. § 1291.  We review the district court's grant of summary judgment de novo.

*Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1001 (9th Cir. 2019).  We

affirm.

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

1. Sampson's claim of disparate treatment based upon his race (African-American) is premised on Defendant's reassignment of certain sales representatives ("Named Account Executives" or "NAEs") in its Las Vegas office from "vertical" accounts—meaning sales accounts in particular industries—to sales accounts in particular geographic territories defined by zip codes. Although Sampson argues that the change from verticals to zip-code territories and the loss of his vertical accounts constitute two separate grounds for his disparate treatment claim, we analyze these actions together because they occurred at the same time as part of an overall realignment of the relevant accounts.

In contending that he presented sufficient evidence to raise an inference of intentional discrimination for purposes of his Title VII and § 1981 disparate treatment claims, Sampson relies on the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 690–91 (9th Cir. 2017). Under that framework, (1) the plaintiff must first "demonstrate[] his prima facie case"; (2) then "the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse employment action"; and (3) "[i]f the defendant meets this burden, . . . the plaintiff must then raise a triable issue of material fact as to whether the defendant's proffered reasons are mere pretext for unlawful discrimination." *Id*. at 691 (simplified).

Assuming arguendo that Sampson can establish a prima facie case of disparate treatment, Defendant articulated legitimate, non-discriminatory reasons for its realignment of accounts involving NAEs. Sampson's manager, Tom Reed, and Reed's boss, Robert Dean, testified that the realignment was implemented to address the NAEs' "underperform[ance]" by eliminating their need to travel throughout the Las Vegas Valley and by giving them "more opportunit[ies] to perform at a higher level."[1] They further explained that Sampson was assigned the downtown Las Vegas zip codes, because that is where many of the law firms in his previous vertical portfolio had been located. Although the higher-level account executive positions ("Senior Account Executive" or "SAE", and "Major Account Executive" or "MAE") still had vertical accounts, adjustments were also made to their accounts as part of the realignment. Overall, the SAEs and the MAE experienced a net loss in total accounts, and nearly all the NAE positions experienced a net gain. In Sampson's case, his total number of assigned accounts increased by more than 400. Because Defendant articulated legitimate reasons for the realignment, the burden shifts back to Sampson to show that Defendant's reasons are pretextual. *See Opara v. Yellen*, 57 F.4th 709, 726 (9th Cir. 2023).

A plaintiff can prove pretext either "(1) directly, by showing that unlawful

---

[1] For example, undisputed evidence shows that, during the eight months preceding the realignment, Sampson had been issued multiple written warnings about his failure to meet his sales quotas.

discrimination more likely than not motivated the employer; (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable; or via a combination of these two kinds of evidence." *Opara*, 57 F.4th at 723 (simplified). We conclude that Sampson failed to present sufficient evidence to raise a triable issue of pretext.

Sampson emphasizes that two of the four NAE positions were occupied by African-Americans (in contrast to no African-Americans among the SAE and MAE positions) and that those two positions, after the realignment, had the second and third lowest average three-year sales revenue. But it is undisputed that NAEs are the lowest tier of sales representatives, and that they have more accounts, lower sales quotas, and lower base salaries than other representatives. Moreover, a then-unfilled NAE position had the lowest average three-year revenue, and, even before the realignment, the fourth position had already been a zip-code-based position involving "all accounts in northern Arizona." Considering these points in light of the record as a whole, no reasonable jury could conclude that the realignment of accounts involving the NAE positions was motivated by race. *See Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) ("A disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action." (citation omitted)).

Sampson nonetheless also argues that, after the realignment, Robert Bloecker, who was employed by Defendant in Las Vegas from 2017 to 2019, was able to keep a mix of both vertical and zip-code-based accounts, while Sampson assertedly did not. Sampson claims in his opening brief that Bloecker "was never a[n] SAE," and in his reply brief, Sampson goes further and says that he presented enough evidence to show that "Bloecker was an NAE." However, the declaration of Bloecker on which Sampson relies does not claim that Bloecker was actually an "NAE." The declaration instead states that Bloecker believed that his title was "Production Print Specialist" and that he "was never promoted to a position as a "Senior Account Executive' or a "Major Account Executive.'" Bloecker's declaration explained that, before the realignment, his "job was primarily to sell production print equipment (larger format / higher volume machines) to print companies and internal print departments (a college print shop for example) and to UPS Stores" and that he retained such vertical accounts after the realignment. Moreover, the evidence in the record concerning Defendant's internal personnel records all consistently listed Bloecker as being an SAE, not an NAE. Keeping in mind that the ultimate question is whether "an employer honestly believed" its non-discriminatory reasons and did not act based on race, *see Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (citation omitted), we conclude that Bloecker's ability to retain certain vertical accounts, even when

5

considered with all of the other evidence in the record, would not permit a reasonable jury to find that Sampson's different account composition as compared to Bloecker was due to Sampson's race.

2.  We also apply the *McDonnell Douglas* framework in evaluating the district court's summary judgment for Defendant with respect to Sampson's retaliation claims under Title VII and § 1981.  *See Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008).  On appeal, the parties do not dispute that Sampson presented a prima facie case of retaliation and that Defendant articulated legitimate, non-discriminatory reasons for Sampson's termination.  To prove that Defendant's legitimate reasons were pretextual, Sampson "must produce specific facts either directly evidencing" a retaliatory motive or "showing that the employer's explanation is not credible."  *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir. 1991).  Sampson failed to present sufficient evidence under this standard.

Sampson contends that a reasonable jury could disbelieve Reed's testimony that Reed was unaware that Sampson had complained about race discrimination, and that this constitutes direct evidence of retaliation.  We disagree.  "Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption."  *Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1141 (9th Cir. 2001) (simplified).  In

the context of a retaliation claim, that means evidence showing, without "inference or presumption," that the adverse action "was linked" to the protected activity. *Id*. (citation omitted). Doubts about Reed's credibility on this point do not establish, without inference, that Defendant retaliated against Sampson when he was fired.

The circumstantial evidence in the record fails to raise a reasonable inference that the proffered grounds for terminating Sampson were pretextual. Sampson's termination letter, signed by Defendant's director of Human Resources, stated that Defendant terminated Sampson because he had made false entries into a database that tracks Defendant's activity with customers and prospective clients and because Sampson had been dishonest during the investigation into those false entries.[2] Sampson claims that, on summary judgment, we must credit his denials that he made the false entries and must instead accept his alternative theory that Reed, who assertedly had access to Sampson's account, had made the false entries in an effort to frame Sampson. However, this explanation would not account for the allegedly false statements made by Sampson during the investigation.

---

[2] Sampson argues that a reasonable jury could find that, because Reed had described the grounds for termination as merely Sampson's "falsifying activity records," Sampson's alleged false statements concerning those activities during the investigation were not in fact a ground for the termination. We disagree. Given that these false statements were likewise allegedly false representations concerning the same underlying activities, and given that Reed was only one of several persons involved in the termination, Reed's comment provides no plausible basis for concluding that Sampson's alleged lies during the investigation played no role in his termination.

Although Sampson argues that these latter statements were misunderstood or inaccurately recounted, that is not enough to establish pretext. With respect to the issue of pretext, we have held that "it is not important" whether the proffered non-discriminatory and non-retaliatory grounds were "objectively" correct; what matters is whether the "employer honestly believed its reason[s] for its actions, even if its reason[s] [are] 'foolish or trivial or even baseless.'" *Villiarimo*, 281 F.3d at 1063 (citation omitted). These grounds for the termination were supported by a detailed report of a retained investigator as well as a private investigator's report of surveillance of Sampson, and Sampson failed to present sufficient evidence from which a reasonable jury could find that the relevant decisionmakers did not believe the evidence and conclusions reflected in these reports. *See Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 752 n.5 (9th Cir. 2001) ("Mere opinions and beliefs that [a defendant's] actions were retaliatory, based on no specific or substantial evidence, are not enough to create a genuine issue of material fact on the issue of pretext.").

**AFFIRMED.**